IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

RECEIVED CLERK'S OFFICE

2008 JAN 28  A 11: 04

DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON, SC

David Augustus Goodson,           )     C. A. No. 2:07-1174-CMC-RSC
#284608,                          )
                                  )
                Petitioner,       )
                                  )
        -versus-                  )     **REPORT AND RECOMMENDATION**
                                  )
State of South Carolina; and      )
Warden Pinson, Walden             )
Correctional Institution,         )
                                  )
                Respondents.      )

This habeas corpus petition under 28 U.S.C. § 2254 brought
by a state prisoner proceeding <u>pro</u> <u>se</u> is before the undersigned
United States Magistrate Judge for a report and recommendation on
the respondents' summary judgment motion. 28 U.S.C. § 636(b).

### PROCEDURAL HISTORY

The petitioner, David Augustus Goodson, is presently
confined to the Walden Correctional Institution of the South
Carolina Department of Corrections pursuant to orders of
commitment from the Clerk of Court for Richland County.
Petitioner was indicted at the February 2002 term of the Court of
General Sessions for Richland County for Criminal Domestic
Violence of a High and Aggravated Nature (2002-GS-40-458).   PCR
App. p. 402-03.   Petitioner was also indicted at the March 2002
term of Court of General Sessions for Richland County for
Criminal Domestic Violence 3rd and Above. (2002-GS-40-8401).

1

Attorneys Hans W. Pauling and Tara Lyons represented Petitioner at the trial level. Petitioner was tried before the Honorable Henry L. McKellar and a jury. On May 29, 2002, Petitioner's jury reached a verdict of guilty as to the charge of Criminal Domestic Violence of a High and Aggravated Nature and reached a verdict of not guilty for the charge of Criminal Domestic Violence 3rd and above. PCR App. p. 284. Judge McKellar then sentenced Petitioner to ten (10) years in prison, suspended five (5) years of the sentence, and placed Petitioner on probation for two (2) years. PCR App. p. 291.

Petitioner filed a timely Notice of Appeal. PCR App. p. 414. An Anders Brief was filed on Petitioner's behalf to the South Carolina Court of Appeals, PCR App. p. 295-307, raising the following ground:

> Whether the trial court erred in refusing to grant [Petitioner's] motion for a mistrial or a curative instruction where the state elicited testimony of appellant's alleged use of cocaine, which was inadmissible and prejudicial to the appellant?

Petitioner filed a pro se brief in which he raised the following issues:

> 1.    Did the trial court err in refusing to excuse Juror #158-Marion Richardson once he informed the court that he was a relative of the Defendant and that would affect his ability to be fair and impartial in this case?
>
> 2.    Did the trial court err in putting a two day time limit on the trial and instructing the jury that it would not go past 5:00 pm?

2

3.    Did the trial court err in refusing to grant appellant's motion for a mistrial or a curative instruction where the state elicited testimony of appellant's alleged use of cocaine.  Which was inadmissible and prejudicial to the appellant?

4.    Did the trial court err in not allowing the issue of the mutual restraining order placed on the appellant and his wife by family court be presented during trial?

5.    Did the trial court err in sentencing the appellant to the maximum sentence because he took the case to trial?

6.    Did the trial court err by allowing Judge McKeller to preside over a case that was previously heard on several occations (sic) by Judge Floyd, thus making it prejudicial to the defense?

(Attachment 3).

The South Carolina Court of Appeals dismissed Petitioner's appeal. <u>State v. Goodson</u>, Unpub. Op. No. 2004-UP-132 (S.C. Ct. App. filed February 26th, 2004). (Attachment 4).  The Remittitur was sent to the trial court on April 15, 2004. (Attachment 5).

During the pendency of the appeal, Petitioner filed a <u>pro</u> <u>se</u> Application for Post-Conviction Relief (APCR) on July 31, 2002. (2002-CP-40-3680). PCR App. p. 308-12.  In the APCR, Petitioner raised the following grounds:

(1)    Ineffective Assistance of Counsel;

(2)    States Attorney allowed to dictate rules of court;

(3)    Court ordered deadline (90) days to prosecute breached.

PCR App. p. 309.  Through counsel, Tara Shurling, Esquire,

3

Petitioner next filed an Amended Application for Post-Conviction relief dated January 11, 2005, in which he raised the following issues:

> (1)  Counsel was ineffective for failing to bring out at trial that [Petitioner] and victim were subject to a mutual restraining order;

> (2)  Counsel was ineffective for failing to object to the introduction of pictures of the victim's broken arm when those pictures were never introduced at trial;

> (3)  Counsel was ineffective for failing to move to suppress the statement taken by Investigator McDaniels before [Petitioner] had been read his Miranda Rights;

> (4)  [Petitioner] was never allowed to review the above mentioned statement, yet victim was allowed to amend her's three times;

> (5)  Counsel was ineffective for failing to object to the assault charge of "HIGH AND AGGRAVATED NATURE," when all his wife ever received was a bruised eye;

> (6)  Counsel was ineffective for failing to object to mention of cocaine at trial nor requesting a limiting instruction;

> (7)  Judge Floyd handled the [Petitioner'sl bond revocation, without good cause his bond was revoked and Judge Floyd ordered the case to be tried in 90 days, and Judge Floyd did not hear the case when he should have based upon his earlier dealings with the matter and counsel was ineffective for not remedying that;

> (8)  Counsel was ineffective for not preparing for the case;

> (9)  Counsel was ineffective in bringing the victim's history of alcoholism;

> (10) Counsel was ineffective for failing to bring

4

out that the police were often called to
[Petitioner's] home .but it was always connected
to wife's alcoholism;

(11) Counsel was ineffective for failing to bring
out the fact that even though [Petitioner] has two
prior CDV charges or convictions on his record .
they are all on the same victim.

PCR 2 App. p. 383. The State filed a Return on September 20,

2002. PCR App. p. 313-16.

An evidentiary hearing in the matter was held before the

Honorable Alison R. Lee on January 12, 2005. PCR App. p. 324-96.

Petitioner was present and testified. He was represented by

retained counsel Tara D. Shurling, Esquire. Trial counsel and

the victim testified. On March 29, 2005, Judge Lee issued an

Order in which she found that trial counsel was not ineffective.

PCR App. p. 397-401. The following day, March 30, 2005,

Petitioner filed his Notice of Appeal. (Attachment 6).

Appellate Defender Aileen P. Clare filed a <u>Johnson</u> Petition

for a Writ of Certiorari on Petitioner's behalf on August 31,

2005, in which she raised the following issue:

Was trial counsel ineffective for failing to
remove petitioner's cousin from the jury, either
through a motion for cause or a peremptory strike,
when the petitioner and his cousin were not on
good terms?

(Attachment 7).

On December 8, 2005, Petitioner filed a <u>pro</u> <u>se</u> brief in

which he raised the following additional issues:

5

1)   Was trial counsel ineffective for failing to bring out at trial that the alleged victim and I were under a Mutual restraining Order?

2)   Was trial counsel ineffective for failing to object at sentencing when Ann Spears (The prosecutor) acting Malicious in her intent presented pictures of my wife with a broken arm and made other accusations that were not true?

3)   Was trial counsel ineffective for failing to remove my cousin from the jury, either through a motion for cause or a peremptory strike, when my cousin and I were not on good terms ?

4)   Was trial counsel ineffective for failing to move to suppress the statement taken by investigator McDaniels from me - but thirty minutes after my arrest Miranda rights?

5)   I was never allowed to review my statement, but the alleged victim was allowed to alter her statement three times before trial; was trial counsel ineffective for failing to bring this out at trial?

6)   Trial counsel was ineffective for failing to object to the assault charge of "HIGH AND AGGRAVATED NATURE," when all my wife ever received was a "bruised eye?"

7)   Was trial counsel ineffective for failing to request a limiting instruction on the mention of cocaine which attacked my character?

8)   Was trial counsel ineffective for failing file a Motion To Dismiss after the case went over the 90 days TRACK Schedule that Judge Floyd ordered it on?

9)   Was trial counsel ineffective in their preparation of my case since co—counsel had never met with me?

10)  Was trial counsel ineffective for failing to bring the alleged victim's history of alcoholism?

6

> 11) Was trial counsel ineffective for failing to bring out that the police were often called to my home- but it was always connected to my wife's alcoholism?
>
> 12) Was trial counsel ineffective for failing to bring out the fact that even though I have two other CDV charges on my record- they are all on the same victim? (sic).

On December 12, 2005, Petitioner also filed a pro se motion in the South Carolina Supreme Court denominated "Motion to Alter or Amend", motion to remand, in which he sought to have the matter remanded to the PCR court for specific findings of fact and rulings on issues not addressed in the PCR court's order denying relief. (Attachment 9). The South Carolina Supreme Court denied Petitioner's pro se Motion to Alter or Amend, motion to remand, on December 14, 2005. (Attachment 12). Pursuant to Rule 227(1), SCACR, on February 15, 2006, Petitioner's case was transferred to the South Carolina Court of Appeals. (Attachment 13). On March 21, 2007, Petitioner's Petition for a Writ of Certiorari was denied by the state court of appeals. (Attachment 14). Lastly, on April 10, 2007, Petitioner's case was remitted to the circuit court. (Attachment 15).

The following documents from the state court record have been made part of the record here:

> (1) The Appendix to the August 31, 2005, Petition for Writ of Certiorari from Denial of PCR (1 vol.) (including the trial transcript; the Final Anders Brief; APCR (2002-CP-40-3680) the Amendment to APCR; Transcript from PCR hearing; Order of Dismissal from PCR; Greenville County Clerk of

7

Court Records (Including the Notice of Direct Appeal);

(2)  The March 2002 Indictment for Criminal Domestic Violence 3rd and Above;

(3)  The August 19, 2003 <u>Pro</u> <u>Se</u> Brief of Appellant;

(4)  The February 26, 2004, S.C. Court of Appeals Unpublished Opinion dismissing Petitioner's appeal;

(5)  The April 15, 2004, Remittitur from dismissal of the Direct Appeal;

(6)  The March 30, 2005, Notice of Appeal from dismissal of PCR;

(7)  The August 31, 2005, <u>Johnson</u> Petition for Writ of Certiorari from dismissal of PCR;

(8)  The December 12, 2005, <u>pro</u> <u>se</u> Motion to Alter or Amend;

(9)  The December 14, 2005, denial Order for Petitioner's Motion to Alter or Amend;

(10) The February 15, 2006, Rule 227(1), SCACR, Order transferring Petitioner's pending Petition for Writ of Certiorari to the S.C. Court of Appeals;

(11) The March 21, 2007, order denying Petitioner's Petition for Writ of Certiorari;

(12) The April 10, 2007, remittitur from denial of Petitioner's Petition for Writ of Certiorari.

## **HABEAS ALLEGATIONS**

Petitioner raised the following allegations in his Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254:

A.   Ground one:  Ineffective Assistance Of Counsel.

8

Supporting FACTS: 1) Counsel did not put up any defense as requested. 2) counsel did not bring up the fact that the alleged victim had violated a Family Court restraining order when she entered the Defendant's home and attacked him as he stated. 3) Counsel refused to strike the Defendant's relative even after being told of the bad blood between them. 4) Counsel failed to remind the court that a curative instruction be given to the jury after the mention of cocaine which attacked the Defendant's character. 5) Defendant's co-counsel had never met him prior to the trial but yet she cross – examined witnesses. This incident took place in his home.

Supporting FACTS:
** Malicious Prosecution due to ineffective assistance of counsel. The prosecution allowed the alleged victim to change her statement three times before trial. The prosecution made claims of abuse that never occured (sic) (Broken shoulder, Broken arms, Broken leg, etc.). The Prosecution coerced Defense counsel into talking his client into not testifying.

B. Ground three: Trial Court Erred in not granting a Mistrial after the issue of cocaine was raised.

Supporting Facts: At the Pre–Trial Hearing, the court ordered that the issue of cocaine would not come in or be mentioned because it would prejudice the defendant. During testimony given for the prosecution by Investigator McDaniels, the issue was brought in when he states "The Defendant's wife accused him of doing cocaine". The Defense immediately requested a mistrial but was denied. The jury was not told to strike what they heard. Nor was a curative instruction given to them. From the juries facial expression at that moment, I knew they'd find me guilty. The State cannot attack the character of a defendant unless the defendant first places his character in issue. Which he did not.

C. Trial Court Erred in issuing a no-contact order as part of the sentence. A criminal court can not seperate (sic) a legally married husband

and wife as part of a sentence.  No one requested
it be placed on.

** After completing this 5 yrs. sentence.  I will
have served 10 yrs. in prison and 7 months on
probation.  This in violation of my rights.  It
exceeds the maximum sentence for this crime.

Petitioner's Petition pp. 4-5.

The petitioner was provided a copy of the respondents'
summary judgment motion on August 1, 2007, and was given an
explanation of dismissal and summary judgment procedure as well
as pertinent extracts from Rules 12 and 56 of the Federal Rules
of Civil Procedure similar to that required by Roseboro v.
Garrison, 528 F.2d 309 (4th Cir. 1975).  The petitioner responded
to the motion on August 31, 2007.  The respondents supplemented
their motion on November 26, 2007, and the petitioner replied on
December 3, 2007.  Hence it appears consideration of the summary
judgment motion is appropriate.

## APPLICABLE LAW

The Antiterrorism and Effective Death Penalty Act of 1996
("AEDPA"), effective April 24, 1996, is applicable to this action
filed in 2007.  Title 28, United States Code, Section 2254(d) and
(e) provides in pertinent part as follows:

(d) An application for a writ of habeas corpus on
behalf of a person in custody pursuant to the
judgment of a State court shall not be granted
with respect to any claim that was adjudicated on
the merits in State court proceedings unless the
adjudication of the claim-

10

(1) resulted in a decision that was contrary
to, or involved an unreasonable application of,
clearly established Federal law, as determined by
the Supreme Court of the United States; or

(2) resulted in a decision that was based on
an unreasonable determination of the facts in
light of the evidence presented in the State court
proceeding.

(e)(1) In a proceeding instituted by an
application for a writ of habeas corpus by a
person in custody pursuant to the judgment of a
State court, a determination of a factual issue
made by a State court shall be presumed to be
correct. The applicant shall have the burden of
rebutting the presumption of correctness by clear
and convincing evidence.

The Supreme Court expounded upon this language in <u>Williams</u>

<u>v. Taylor</u>, 529 U.S. 362, 120 S.Ct. 1495 (2000). Writing for the

majority with respect to this matter, Justice O'Connor

stated that a state court's decision can be contrary to the

Supreme Court's precedent in two ways: first, "if the state

court arrives at a conclusion opposite to that reached by the

Court on a question of law. Second, a state-court decision is

also contrary to the Court's precedent if the state court

confronts facts that are materially indistinguishable from a

relevant Supreme Court precedent and arrives at a result opposite

to" that of the Supreme Court. <u>Id</u>. at 1519.

Justice O'Connor further stated that "[t]he text of §

2254(d)(1) ... suggests that the state court's decision must be

substantially different from the relevant precedent of the

Court." <u>Id</u>. She added that a "state-court decision will also be

11

contrary to the Court's clearly established precedent if the
state court confronts a set of facts that are materially
indistinguishable from a decision of the  Court and nevertheless
arrives at a result different from the Court precedent." Id. at
1519-20. Even if "the federal court considering the prisoner's
habeas application might reach a different result applying"
relevant Supreme Court precedent, so long as the state court
applied the correct legal rule from Supreme Court cases, such a
"run-of-the-mill" state court decision could not be deemed
"contrary to" Supreme Court precedent. Id. at 1520.

As for the "unreasonable application" prong of § 2254(d)(1),
Justice O'Connor stated that a state court decision involves an
unreasonable application of the Court's precedent if "the state
court identifies the correct governing legal rule from the
Court's cases but unreasonably applies it to the facts of the
particular state prisoner's case. Second, a state-court decision
also involves an unreasonable application of the Court's
precedent if the state court either unreasonably extends a legal
principle from our precedent to a new context where it should not
apply or unreasonably refuses to extend that principle to a new
context where it should apply." Id. Justice O'Connor added that
"[u]nder § 2254(d)(1)'s 'unreasonable application' clause, then,
a federal habeas court may not issue the writ simply because that
court concludes in its independent judgment that the relevant

12

state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 1522. In making the "unreasonable application" inquiry, "a federal habeas court ... should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 1521.

In another change brought by the AEDPA, 28 U.S.C. § 2254(e)(1) now states that "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. ... The touchstone for a reasonable determination is 'whether the determination is at least minimally consistent with the facts and circumstances of the case.'" Hennon v. Cooper, 109 F.3d 330, 335 (7th Cir.), cert. denied, 522 U.S. 819 (1997).

## THE HABEAS CORPUS EXHAUSTION REQUIREMENT

Relief under Section 2254 may be had only after a habeas petitioner has exhausted his state court remedies: "It is the rule in this country that assertions of error in criminal proceedings must first be raised in state court in order to form the basis for relief in habeas corpus. Claims not so raised are considered defaulted." Breard v. Green, 523 U.S. 371, 375, 118 S.Ct. 1352 (1998), citing Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497 (1977); see also, 28 U.S.C. § 2254(b). The theory of

13

exhaustion is based on 28 U.S.C. § 2254, which gives the federal court jurisdiction of habeas petitions. See generally, O'Sullivan v. Boerckel, 526 U.S. 838, 119 S.Ct. 1728, (1999). The court's exhaustion requirements under § 2254 are explained in Matthews v. Evatt, 105 F.3d 907, 910-911 (4th Cir.), cert. denied, 522 U.S. 833, 118 S.Ct. 102 (1997). In the interest of giving state courts the first opportunity to consider alleged constitutional errors occurring in a defendant's state trial and sentencing, a § 2254 petitioner is required to "exhaust" all state court remedies before a federal district court can entertain his claims. Thus, a federal habeas court may consider only those issues which have been properly presented to the highest state courts with jurisdiction to decide them. The burden of proving that a claim has been exhausted lies with the petitioner. The exhaustion requirement, though not jurisdictional, is strictly enforced. (Citations omitted).

Additionally, a claim has not been exhausted unless the substance of a petitioner's claim is "fairly presented" to the state courts. The Matthews court explained, "[t]he ground relied upon must be presented face-up and squarely; the federal question must be plainly defined. Oblique references which hint that a theory may be lurking in the woodwork will not suffice. In other words, fair presentation contemplates that both operative facts

14

and the controlling legal principles must be presented to the state court." <u>Matthews v. Evatt</u>, 105 F.3d at 911.

In order to exhaust his collateral claims in state court, a South Carolina habeas corpus petitioner must pursue a direct appeal and/or file an application for relief under the South Carolina Post Conviction Procedure Act, S.C. Code Ann. §§ 17-27-10 - 160.  As the South Carolina Supreme Court has explained: "[W]hen the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies."  <u>In Re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases</u>, 321 S.C. 563, 564, 471 S.E.2d 454, 454 (1990).

Petitioner here had a direct appeal which was unsuccessful. Petitioner also had a full round of PCR proceedings.  His PCR application was denied at the trial court level, and he had a timely petition for a writ of certiorari presenting some, but not all, of his PCR grounds.  The South Carolina Supreme Court denied the petition.  Thus, he has exhausted his direct appeal and his PCR remedy.  Petitioner here has no remaining state remedies which can be pursued.

<b><u>PROCEDURAL DEFAULT</u></b>

When a federal habeas petitioner has failed to raise a claim at the appropriate time in state court and has no further means

15

of bringing that issue before the state courts, the claim will be considered procedurally defaulted, and he will be procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural default of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. See, e.g., Smith v. Murray, 477 U.S. 527, 533, 106 S.Ct. 2661 (1986).

Procedural default can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Furthermore, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. A petitioner must also raise all grounds raised but denied at the PCR hearing level in his subsequent petition to the South Carolina Supreme Court for a writ of certiorari from the denial of PCR if he is to preserve them for consideration here.

### THE RELATIONSHIP BETWEEN EXHAUSTION AND PROCEDURAL DEFAULT

If a petitioner in federal court has failed to raise a claim in state court at the appropriate juncture, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed (or defaulted) his opportunity for

16

relief in the state courts.  Under these circumstances, the
exhaustion requirement is "technically met" and the rules of
procedural bar apply.  Matthews v. Evatt, 105 F.3d 907 (4th Cir.
1997); cert. denied, 522 U.S. 833, 118 S.Ct. 102 (1997), citing
Coleman v. Thompson, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546
(1991); Teague v. Lane, 489 U.S. 288, 297-98, 109 S.Ct. 1060
(1989); George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996).
In other words, where the state court has not had the opportunity
to apply its own procedural bar, the federal court will
nevertheless bar the claim where application of the bar is clear.
Teague v. Lane, 489 U.S. at 297-98.

### EXCUSING PROCEDURAL DEFAULT

Notwithstanding the foregoing, the requirement of exhaustion
is not jurisdictional, and a federal court may consider claims
which have not been presented to the highest South Carolina court
with jurisdiction to hear the claim in very limited
circumstances.  Cranberry v. Greer, 481 U.S. 129, 131, 107 S.Ct.
1671 (1989).  A federal court will review a procedurally
defaulted claim if the petitioner can demonstrate cause for the
default and actual prejudice therefrom, or his actual innocence
of the crimes for which he is being held.  Coleman v. Thompson,
501 U.S. 722, 750, 111 S.Ct. 2546 (1991).  In this context,
"cause" is defined as "some objective factor external to the
defense [that] impeded counsel's efforts to comply with the

17

State's procedural rule." <u>Strickler v. Greene</u>, 527 U.S. 263, 283
n. 24, 119 S.Ct. 1936 (1999), quoting <u>Murray v. Carrier</u>, 477 U.S.
478, 488 (1986). A petitioner must show reasonable diligence in
pursuing his claim to establish cause. <u>Hoke v. Netherland</u>, 92
F.3d 1350, 1354 n. 1 (4th Cir. 1996). Moreover, the claim of
cause must itself be exhausted. <u>Edwards v. Carpenter</u>, 529 U.S.
446, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000) (failure of counsel
to present issue on direct appeal must be exhausted in collateral
proceeding as ineffective assistance to establish cause for
default).

Next, with respect to establishing "actual prejudice," a
petitioner generally must show some error. <u>Tucker v. Catoe</u>, 221
F.3d 600, 615 (4th Cir.), <u>cert. denied</u>, 531 U.S. 1054, 121 S.Ct.
661 (2000). In addition, a petitioner must show an actual and
substantial disadvantage as a result of the error, not merely a
possibility of harm, to show prejudice. <u>Satcher v. Pruett</u>, 126
F.3d 561, 572 (4th Cir. 1997).

"Actual innocence" is not an independent claim, but only a
method of excusing default. <u>O'Dell v. Netherland</u>, 95 F.3d 1214,
1246 (4th Cir. 1996), <u>aff'd</u>, 521 U.S. 151, 117 S.Ct. 1969 (1997).
To prevail under this theory, a petitioner must produce new
evidence that was not available at trial to establish his factual
innocence. <u>Royal v. Taylor</u>, 188 F.3d 239 (4th Cir.1999). A
petitioner may establish actual innocence as to his guilt, <u>Id.</u>,

or his sentence.  <u>Matthews v. Evatt</u>, 105 F.3d 907, 916 (4th Cir. 1997).  It is a habeas petitioner's burden to raise cause and prejudice or actual innocence; if these are not raised by petitioner, the court need not consider the defaulted claim.  <u>Kornahrens v. Evatt</u>, 66 F.3d 1350 (4th Cir. 1995), <u>cert. denied</u>, 517 U.S. 1171, 116 S.Ct. 1575 (1996).

**DISCUSSION**

A review of the record and relevant case law reveals that petition should be denied.  The petitioner's grounds for relief will be reviewed seriatim.

In his first ground for relief, Petitioner asserted that his trial counsel was constitutionally ineffective in several particulars:  "1) Counsel did not put up any defense as requested.  2) counsel did not bring up the fact that the alleged victim had violated a Family Court restraining order when she entered the Defendant's home and attacked him as he stated.  3) Counsel refused to strike the Defendant's relative even after being told of the bad blood between them.  4) Counsel failed to remind the court that a curative instruction be given to the jury after the mention of cocaine which attacked the Defendant's character.  5) Defendant's co-counsel had never met him prior to the trial but yet she cross - examined witnesses.  This incident took place in his home."  (Habeas corpus petition pages 4 and 5.)

This ground was raised and denied by the PCR judge and was raised before and affirmed by the South Carolina Supreme Court. It is therefore available for review here on the merits. Matthews, supra.

When reviewing the decisions of state courts by the deferential standard of review required by the AEDPA, the court is to examine the last reasoned decision by the state court on the merits, here the oral and written decision of PCR court Judge Lee. See, Ylst v. Nunnemaker, 501 U.S. 797, 801-02 (1991).

First Judge Lee correctly identified and relied upon the Supreme Court standard governing ineffective assistance of counsel claims found in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984). In order to succeed on such a claim, Petitioner must show his counsel's performance was "deficient," Strickland, 466 U.S. at 687-88, and that such deficiency resulted in actual prejudice to Petitioner. Id. As to the first prong of the Strickland test, a defense attorney's conduct is deficient if it fails to meet a standard of "reasonably effective assistance." Id. at 687. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689.

20

Still, in addition to showing ineffective representation,
Petitioner must also show "that there is a reasonable probability
that, but for counsel's unprofessional errors, the result of the
proceeding would have been different.  A reasonable probability
is a probability sufficient to undermine confidence in the
outcome." Strickland, 466 U.S. at 694.  If a petitioner fails to
establish either Strickland prong, ineffective representation, or
that, as a result of counsel's error, the result of the
proceeding would have been different, his claim fails.

Judge Lee found that Petitioner had failed in his burden to
show both constitutionally ineffective assistance of counsel and
resulting prejudice.  It appears that this conclusion was not
contrary to, nor involved an unreasonable application of, clearly
established Federal law, as determined by the Supreme Court of
the United States, and was not based on an unreasonable
determination of the facts in light of the evidence presented in
the state court proceeding.

Here, during his PCR hearing, Petitioner testified that he
wanted trial counsel to call witnesses that would show the
erratic and inflammatory nature of his wife, and to show that
he was only striking her back after she had hit him first. (PCR
App. p. 346-47).  Petitioner complained that he gave trial
counsel a list of witnesses but trial counsel only interviewed
his brother and his brother's wife.  During trial counsel's

21

testimony he acknowledged that Petitioner had asked him to put

forth a defense by calling witnesses and trying to discredit his

wife. (PCR App. p. 362).  Trial counsel stated he contacted five

of the witnesses, but found they were but character witnesses or

people who knew the victim was a drinker, as opposed to actual

fact witnesses to the event.  These witnesses would testify that

Petitioner and his wife were violent with each other, and counsel

noted Petitioner himself had just admitted at PCR that he would

hit the victim back if she hit him.  Counsel thought if that

testimony had come out Petitioner would have gotten a longer

sentence. (PCR App. 383; 385}.

Further, counsel testified that since Petitioner had two

prior convictions for criminal domestic violence, and "had a

history" with the victim, counsel was concerned that if he

went into the victim's character, the prosecutor "would

meticulously take hours on a cross, and by the time she [was]

finished the jury [would] know everything about Petitioner".

(PCR App. 362, 375; 383-84).  Counsel noted that by placing into

evidence Petitioner's statement to police, he was able to get a

self-defense charge without exposing Petitioner's prior record

or opening any doors as to the parties' prior history. (PCR App.

384-85).

At the close of the hearing, the PCR judge made an oral

ruling on the case, denying Petitioner's application. (PCR App.

22

p. 389).  The judge specifically found that "based upon the
evidence that I've heard today that it is clear that Mr. Pauling
was able to articulate reasonable trial strategy that would have
been employed with respect to the instances relating to the
character information as to the victim in this case." (PCR App.
p. 389-90).

There is ample support in the record that counsel made a
reasonable strategic decision to avoid the parties' prior history
in the case.  The judge found counsel made decisions based on
reasonable trial strategy, and it cannot be said that the judge
was objectively unreasonable in this determination.  See
generally, Bell v. Evatt, 72 F.3d 421 (4th Cir. 1995) (standing
alone, unsuccessful trial tactics neither constitute prejudice
nor definitively prove ineffective assistance of counsel, and
petitioner must overcome presumption that the challenged actions
was an appropriate and necessary trial strategy).

Additionally, Petitioner did not call any of these
additional witnesses at the PCR hearing, and thus he did not
carry his burden of proof.  See generally, Beaver v. Thompson, 93
F.3d 1186, 1995 (4th Cir. 1996) (rejecting claim that counsel was
ineffective for failing to present mitigation evidence family
members, where there was no proffer of this testimony); Bassette
v. Thompson, 915 F.2d 932 (4th Cir. 1990) (petitioner's
allegation that attorney did ineffective investigation does not

23

support relief absent proffer of the supposed witness's favorable testimony).

Moreover, because an exposure at trial of Petitioner's and the victim's history would have been just as detrimental to Petitioner as it would have been helpful, it cannot be said that delving into the victim's past would have created the reasonable probability of a different result necessary to establish the Strickland prejudice prong.  Petitioner is not entitled to habeas relief on this ground.

In his second example of ineffective assistance of counsel, Petitioner alleged that counsel did not bring up the fact that the victim had herself violated a restraining order by being in Petitioner's home when the assault occurred.  This issue was raised in the Amended APCR. (PCR App. 318).  However, at the evidentiary hearing, it was not mentioned in the list of allegations PCR counsel was going to raise, nor was it addressed in Petitioner's direct testimony. (PCR App. 328-30).  The PCR judge did not orally rule on any such issue, and it was not addressed in the written order. (PCR App. 389-94; 435-37). Petitioner did put this in his brief to the Supreme court (Attachment 8), but since Petitioner did not assert this to the PCR court and the PCR court did not rule on it, it would not have been preserved for PCR appeal.  Plyler v. State, 309 S.C. 408, 424 S.E.2d 777 (1992) (issue must be both raised to and

24

ruled upon by PCR judge to be preserved for appellate review);

Rule 59(e), SCRCP (providing avenue for any party to move to

alter or amend a judgment). Since Petitioner did not present

this claim to the state's highest court in a procedurally viable

manner and the state courts would find any attempt to assert the

claim now to be untimely and successive, the claim is

procedurally barred from review in federal habeas corpus. See,

e.g., Coleman v. Thompson, 501 U.S. 722 (1991) (issue not

properly raised to the state's highest court, and procedurally

impossible to raise there now, is procedurally barred from review

in federal habeas). Nor has Petitioner demonstrated cause and

prejudice or actual innocence to relieve him of the default. He

is not entitled to relief.

In his third instance Petitioner contends that counsel was

ineffective when he did not strike for cause a juror who was his

third cousin and with whom he had "bad blood." This issue was

raised in the PCR, the Johnson petition, and the Petitioner's pro

se filing before the state Supreme Court, but the state Supreme

Court dismissed the claim on appeal.

Counsel testified that he did not recall ever having been

told by Petitioner that there was "bad blood" with the juror and

that if he had been told that, he would have struck the juror for

cause. (PCR App. p. 372).

25

The PCR judge orally rejected this claim, finding counsel's testimony more credible than Petitioner's. (PCR App. 394). In Judge Lee's Order of Dismissal, she made a finding that trial counsel was more credible and that had trial counsel known of the adverse relations between the petitioner and juror, he would have struck the juror. (PCR App. 437). Counsel's credible testimony provided the support for the judge's findings, so it cannot be said the findings were objectively unreasonable. See, e.g., Holladay v. Haley, Op. No. 98-6937, 2000 W.L. 430047 (11th Cir. filed April 19, 2000) (trial counsel not ineffective for failing to discover mental health records of client where client did not inform counsel of this history and client's behavior did not indicate mental illness); Collins v. Francis, 728 F.2d 1322 (11th Cir. 1984) (counsel was not ineffective for failing to investigate witnesses about whom defendant did not tell him). Petitioner did not show attorney error or prejudice therefrom and is not entitled to relief.

In his fourth objection, Petitioner contends his counsel was ineffective for failing to request a curative instruction after an investigator read from Petitioner's statement that the argument started when Petitioner's wife accused him of going in the bathroom to ingest cocaine. At trial, the prosecution noted that it wanted to go into the fact that the domestic violence started after the victim pushed her way into the bathroom, saw a

26

white powder and accused Petitioner of doing cocaine. This led her to berate her husband in front of guests and precipitated the fight. The trial court ruled any reference to cocaine would be an attack on Petitioner's character and was inadmissible. (PCR App. 29-330). The witnesses were informed not to mention cocaine. (PCR App. 33-340).

Nonetheless, an investigating officer read Petitioner's statement at trial that "about 2:30 in the morning [the victim] start accusing me of doing cocaine". Counsel moved for a mistrial. The court denied the motion, finding no substantial prejudice from the fact that Petitioner made the statement himself and no one had testified he actually used cocaine. (PCR App. 211-17). After the witness was completed and the lunch break occurred, the defense asked the court for a curative instruction as to the issue. Co-counsel noted she was not sure there was any instruction "worth giving", but they discussed the matter at lunch and just decided to go ahead and request it. The court found that a curative instruction at that point would be detrimental to the defendant in that it would call attention to the issue. The judge did offer to give one at the time he charged the jury. (PCR App. 232-33).

Petitioner raised this issue during his PCR hearing and in his appeal where he alleged that trial counsel was ineffective for not immediately requesting a contemporaneous curative

27

instruction. (PCR App. p. 336). Petitioner's trial counsel set forth his views on trial strategy and stated that "you've got to watch how much attention you draw to prejudicial and inadmissible testimony because you make it more important [by objecting to it]." (PCR App. p. 369). Counsel stated that he believed the investigator intentionally violated the ruling in limine but stated: "I had to think about whether or not I wanted to draw too much attention to that but, you know, that was a trial decision that I made." (PCR App. p. 370).

The PCR judge orally ruled that trial counsel's decision not to ask for a contemporaneous curative instruction was a matter of trial strategy. (PCR App. p. 3910. She noted that the judge offered to give one in the final charge. The PCR judge stated that she found counsel's decision was a reasonable trial strategy not to pursue the issue any further since at that point cocaine use had been mentioned only once. (PCR App. 390-91). The PCR Order was based on a finding that trial counsel did not immediately pursue an instruction for valid strategic reasons, and concluded that there was no prejudice from the failure to pursue a curative instruction. (PCR App. 436-37).

Petitioner did not show error and further, did not show prejudice. There was a single brief mention of cocaine, and it was Petitioner's own statement that recounted merely an accusation, not any sort of admission of use. Here, prior to the

28

mentioning of cocaine use, the State had presented seven (7)
witnesses tending to show that Petitioner engaged in criminal
domestic violence with his wife.  During the presentation of
verbal testimony, the State also presented picture evidence
revealing the beaten face of the victim. (PCR App. p. 136).  As
well, through witness testimony, the State described an evening
of drinking into the early morning hours. (PCR App. p. 78,
119-20).  It cannot be said that a failure to ask for a
contemporaneous curative instruction created a reasonable
probability of a not guilty verdict.

Again, it does not appear that Judge Lee's conclusion that
Petitioner had failed in his burden to show both constitutionally
ineffective assistance of counsel and prejudice was contrary to,
or involved an unreasonable application of, clearly established
federal law, as determined by the Supreme Court of the United
States.  Further the decision was not based on an unreasonable
determination of the facts in light of the evidence presented in
the state court proceeding.  No relief should issue.

In his fifth assignment of error Petitioner complained that
co-counsel Lyons did not personally meet with him prior to trial.
This issue was not ruled on by Judge Lee and Petitioner did not
file the appropriate motion under Rule 59(e) SCRCP at the right
time in the right court to obtain a specific ruling.  Therefore,
the ground has been procedurally defaulted and this court should

not reach the merits of the ground.  See, e.g., Coleman v.
Thompson, 501 U.S. 722 (1991).  Further, Petitioner has not
demonstrated error or prejudice therefrom, and he has not
established actual innocence.  The ground should be dismissed.

Petitioner's next ground for relief is as follows:

> Ground Two Malicious Prosecution Due to
> Ineffective Assistance of Counsel.

> Petitioner asserts his counsel was ineffective for
> failing to object to the following:

>> a) Prosecution allowed the alleged victim to
>> change her statement three times before
>> trial;

>> b) Prosecution made claims of abuse that
>> never occurred; and

>> c) Prosecution coerced defense counsel into
>> talking his client into not testifying.

In Ground 2, Petitioner complained that his attorney erred
when he did not present evidence that the victim changed her
statement three times.  At PCR, Petitioner claimed the victim
called him prior to trial and told him that the prosecution was
pressuring her to testify against him and threatening to have her
children taken or to charge her with filing a false report if she
recanted.  Petitioner said his lawyer kept saying that the
prosecutor was very tough. (PCR App. 345).  The victim testified
at PCR that she tried to tell the solicitor's office she wanted
to drop the charges, but they were "just going forward with it".
She said the prosecution threatened her with DSS action because

of the violence in the home, but stated she could not remember if she told her husband's lawyer this.  She stated she could not remember the facts surrounding the charged event because she was intoxicated.  She admitted, however, that there was a fight between her and Petitioner that night. (PCR App. 350-59).

Trial counsel testified that the victim never told him the prosecution was threatening her with DSS action.  Counsel testified that the victim did call him asking for a bond reduction for the petitioner, and he advised the prosecutor the victim was contacting him.  He noted he had to be very careful in talking with a complaining witness, and could not discuss with her whether to testify or not to testify. (PCR App. 363-65).

The order of dismissal from the PCR hearing addressed this claim and found it was without merit. (PCR App. p. 438). Judge Lee's oral order found that, based on the victim's testimony, the victim never informed defense counsel about the alleged threats by the prosecution. (PCR App. 389-90).  The written order found the allegations of prosecutorial misconduct to be without merit and also found that the victim's testimony was not credible. (PCR App. 401).

Here, Petitioner failed in his burden to show any error. Counsel cannot be ineffective within the meaning of Strickland for failing "to bring out" alleged misconduct about which he knew nothing.  See, e.g., Collins v. Francis, 728 F.2d 1322 (11th Cir.

31

1984) (counsel was not ineffective for failing to investigate witnesses about whom defendant did not tell him).

Likewise, Petitioner failed in his burden to show prejudice. Here, the victim testified at the PCR hearing that she and Petitioner did have a fight and that was corroborated at trial by photographs of her injuries, as well as testimony from police investigators, a friend, and medical personnel.

It cannot be said that Judge Lee's conclusion was contrary to, or involved an unreasonable application of, clearly established federal law, or that it was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Petitioner is not entitled to relief.

Petitioner next asserted that counsel was ineffective for not objecting to the Solicitor's sentencing argument which referred to a broken shoulder, arm, and leg, as examples of Petitioner's abuse of the victim.

Here, at sentencing, the prosecutor went through a number of incidents where Petitioner attacked the victim. The prosecutor had medical records to support these claims and Petitioner had two prior convictions for criminal domestic violence against the victim. (PCR App. 286-87). Defense counsel noted that the procutor did not go to trial on those alleged prior incidents, and that the relationship in this case was more of a

32

"codependency thing". Petitioner himself assured the judge that the relationship was over and they were getting a divorce. (PCR App. 288-91). Additionally, at the PCR hearing Petitioner offered no evidence to support his claim that the prior instances were not the result of criminal domestic violence.

When issuing her verbal ruling dismissing Petitioner's PCR, Judge Lee noted that it was reasonable for trial counsel to take the position that he was not here to try alleged prior instances, and that the case should be focused only on that which was decided. (PCR App. p. 391). The court also noted that Petitioner could have denied the other claims when he spoke to the judge before sentencing, but instead Petitioner spoke only about getting a divorce and attending counseling. (PCR App. 393). The finding that this was reasonable strategy and not constitutionally ineffective assistance of counsel is not contrary to, and did not involve an unreasonable application of, clearly established federal law. Further, it was based on a reasonable determination of the facts in light of the evidence presented in the state court proceeding. As a result Petitioner is not entitled to relief here.

Next, Petitioner asserted that the actions of the prosecution coerced his counsel into talking him out of testifying. During trial, after colloquy with the court and an off the record discussion among counsel and Petitioner, counsel

advised the court that Petitioner decided not to testify.
(PCR App. 242).  In a passing sentence during the PCR hearing,
Petitioner raised this allegation, contending counsel pressured
him into not testifying, and then rested before Petitioner could
argue that witnesses should be called. (PCR App. p. 346).
Trial counsel stated that Petitioner was a very strong willed
person and if Petitioner had wanted to testify he could have
testified.  Counsel testified that he advised Petitioner that
if he testified, the prosecutor "would meticulously take hours on
a cross, and by the time she [was] finished the jury [would] know
everything about Petitioner". (PCR App. 362, 375; 383-84).  Judge
Lee did not rule on the matter in her oral or her written order.
Again Petitioner did not file a proper Rule 58(e) motion to
obtain ruling.

This allegation has been procedurally defaulted and this
court should not reach the merits of the ground.  See, e.g.,
Coleman v. Thompson, 501 U.S. 722 (1991).  Further, Petitioner
has not demonstrated cause for the default or prejudice therefrom
and he has not established actual innocence.  The ground should
be dismissed.

In his next ground for relief, Petitioner asserted that the
trial court erred by not granting his attorney's motion for a
mistrial after the investigator read from Petitioner's statement
to the police that the subject fight began when his wife accused

34

him of using cocaine.  This issue has been exhausted in the direct appeal and is not procedurally defaulted.  However, as discussed supra, there was but one brief reference, read from Petitioner's own statement to police, about a mere accusation his wife had made.  This is not an unreasonable conclusion based upon the overwhelming evidence presented at trial that this could not have resulted in a fundamentally unfair proceeding.  Relief should be denied.

Petitioner's final ground for habeas relief is his contention that the trial court erred by issuing a "nocontact" order between himself and his wife as a part of his sentence. This would have been a direct appeal issue, but the petitioner did not raise this objection to his sentence on direct appeal. It is therefore procedurally defaulted and not subject to review on the merits here.  Coleman v. Thompson, 501 U.S. 722 (1991). Further, Petitioner has not demonstrated cause for the default or prejudice therefrom and he has not established actual innocence. The ground should be dismissed.

## CONCLUSION

Accordingly for the aforementioned reasons, it is recommended that the respondents' summary judgment motion be granted and this matter ended.

35

Respectfully Submitted,

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina

January 28, 2008

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).